POLLAK, Judge,
concurring.
I join the court’s opinion. I would only add that what is at issue in this case is a change in regulatory policy coincident with a change in administration. Counsel for respondents said as much on oral argument: “The metalworking fluids ... were listed as a high priority only following the priority-setting process of a prior administration ... and those priorities are different than the current ones.” There is nothing obscure, and nothing suspect, about this phenomenon. That’s one of the important things that elections are about. Whether OSHA’s current policy priorities are wiser or less wise than those previously pursued is not for a court to determine.[1] Our job is to determine whether respondents’ selection of new priorities should be deemed either “arbitrary” or “capricious.” In making this determination with respect to agency declination to institute rulemak-ing, “as in more typical reviews ... we must consider whether the agency’s decision was ‘reasoned.’ ” American Horse Protection Ass’n, Inc. v. Lyng, 812 F.2d 1, 5 (D.C.Cir.1987); cf. Public Citizen Health Research Group v. Chao, 314 F.3d 143, 151 (3d Cir.2002) (“Our polestar is reasonableness....”). As the court’s opinion persuasively establishes, OSHA’s *257 decision was clearly “reasoned” and hence not “arbitrary” or “capricious.”

. A change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations. As long as the agency remains within the bounds established by Congress, it is entitled to assess administrative records and evaluate priorities in light of the philosophy of the administration.
Motor Vehicle Mfrs. Ass’n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 59, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (Rehnquist, J., concurring in part and dissenting in part).